*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW J. KRIEG,

        Plaintiff-Appellee/Cross-Appellant,

v

KATHERINE A. BALEJA, formerly known as
KATHERINE A. KRIEG,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
October 20, 2022

No. 359264
Gratiot Circuit Court
LC No. 16-003404-DM

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order changing the primary physical custody of the parties' minor child to plaintiff. Plaintiff has filed a cross-appeal challenging the trial court's decision to allow defendant's parenting time to remain unsupervised and declining to modify the parties' joint legal custody of the child. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises in the context of contentious divorce and custody proceedings, and these parties are before this Court for the third time. Originally, in *Krieg v Krieg*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2018 (Docket No. 341055), p 1 (*Krieg I*), plaintiff appealed the trial court's judgment of divorce and custody decision, which awarded primary physical custody of the child to defendant. We described the underlying facts as follows:

The parties married in July 2014. [Defendant], who had lived in Saginaw, moved into [plaintiff's] home in Alma. [Plaintiff] began an extramarital affair with Rachel Young, an employee at the pizzeria he owns, in October 2015. In December 2015, after [defendant] and [plaintiff] had discussed starting a family, [defendant] informed [plaintiff] that she was pregnant. [Plaintiff] reacted poorly to this news. [Defendant] later moved back to Saginaw, and [plaintiff] stayed in Alma, where he and Rachel currently live. [Plaintiff] filed for divorce in February 2016.

The child was born in August 2016. [Plaintiff] began visiting the child at [Defendant's] home a few times a week. In September 2016, the trial court entered a temporary order granting [plaintiff] three four-hour parenting visits per week, which he mostly exercised at his grandparents' home in Bay City. In February 2016 [sic], the trial court expanded [plaintiff's] parenting-time visits to eight hours, and he began to bring the child to his home in Alma.

The parties agreed to have Dr. Tracy Allan perform a custody evaluation. Dr. Allan found that [plaintiff] exhibited "solid" parenting skills while [defendant] showed "exceptional" parenting skills. Dr. Allan recommended that the parties receive equal parenting time on a gradually increasing basis. For example, she testified, [plaintiff] should have one overnight visit within one week and an additional overnight visit within another week, if the first overnight visit went well. Molly Minnick, an infant mental health specialist who became involved with the parties early in the child's life, also recommended that [plaintiff] receive overnight visitation, but she recommended a slower transition. Minnick proposed that [plaintiff] have one overnight visit per week for six weeks before adding a second weekly overnight visit, assuming all went well with the first overnight visit. The experts agreed that the child was bonded to both parents. At trial, [plaintiff] sought equal parenting time, while [defendant] requested primary physical custody and agreed to gradually increasing parenting time for [plaintiff].

The trial court issued a bench ruling in June 2017, when the child was 10 months old. The trial court first determined that an established custodial environment existed only with [defendant]. The trial court then found that [plaintiff's] request for equal parenting time would constitute a change in the custodial environment. Reviewing the best-interest factors and relying heavily on Dr. Allan's recommendations, the trial court found that four factors weighed in [defendant's] favor and the rest favored neither party. The trial court ruled that [plaintiff] failed to establish by clear and convincing evidence that a change in the custodial environment was in the child's best interests. The trial court awarded [defendant] primary physical custody and [plaintiff] one overnight parenting time visit and one midweek parenting-time visit per week. [*Id.*, unpub op at 1-2.]

In this first appeal, this Court rejected plaintiff's arguments that the trial court erred when it found that an established custodial environment existed only with defendant, that the court abused its discretion by fashioning a parenting-time award, and that the court erred in its consideration of several of the statutory best-interest factors in MCL 722.23. *Id.*, unpub op at 2-9.

Plaintiff later moved to modify his parenting time by increasing his overnight visits with the child. The referee determined that plaintiff had demonstrated a basis to increase parenting time and the trial court upheld this determination. Defendant appealed that order, and this Court affirmed. *Krieg v Krieg*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2021 (Docket No. 350466), p 1 (*Krieg II*).

While the second appeal was pending, plaintiff again moved for a family evaluation and a change of custody. Plaintiff argued that defendant was attempting to alienate the child against

plaintiff and his family. In support of his motion, plaintiff identified numerous statements that the child had "parroted" from defendant or other persons, including "Daddy's bad guy," "Daddy's bad," "Rachel's bad," and the child's half-sister was "bad." According to plaintiff, the child reported that defendant had told him these things. The child also reported falsehoods that defendant allegedly told him, such as that plaintiff had "smack[ed] down the door" trying to get into defendant's home, and that plaintiff had kicked defendant out of his home in order to have Rachel live with him. Plaintiff maintained that the child's relationships with him and his family were normal, but the child still recited these disparagements and falsehoods as if they were fact. Plaintiff also noted that defendant had been keeping an "obsession-driven logbook" that documented behavior like defendant inspecting the child's feces and determining that plaintiff was feeding the child improperly, or that she had checked plaintiff's Facebook posts in order to claim that he was neglecting the child or using the Internet while driving. Plaintiff argued that defendant's actions were designed to alienate the child from plaintiff. Plaintiff argued that the trial court should either diagnose, monitor, and treat defendant to stop her alienating behavior, or change the child's custodial environment to plaintiff's "psychologically safe" home.[1] Plaintiff requested a full-family evaluation by a trained expert in family evaluation, and an evidentiary hearing. The trial court found that the allegations in plaintiff's motion demonstrated proper cause or a change of circumstances sufficient to support the requested change of custody. Accordingly, the court referred the matter for a referee hearing and appointed Sharon Hobbs, Ph.D., to complete a family evaluation.

At the hearing, the referee heard testimony from the parties, Dr. Hobbs, and other witnesses, including Randy Flood, a limited license psychologist who was qualified as an expert in psychology, parental alienation, psychological evaluations, family evaluations, parental fitness, and "resist and refuse dynamics." Plaintiff also presented audio recordings of some of the child's statements and explanations that defendant had either told him to make the statements, or that he had learned them from her. The referee considered the statutory best-interest factors in MCL 722.23 and found that several factors favored plaintiff, largely relying on testimony from Dr. Hobbs and Flood about how the child's comments and other behaviors indicated that defendant was engaging in alienating conduct and that defendant's own behaviors indicated that she was dependent on the child for her own nurturing, referred to as "enmeshment," which was usually unhealthy. Dr. Hobbs and Flood provided similar, though not identical, testimony as to how these behaviors were negatively impacting the child and could lead to further harm if they continued. The two witnesses also offered recommendations on what could be done to rectify the situation. The referee recommended that plaintiff be awarded primary physical custody of the child and that defendant be allowed only supervised parenting time in a therapeutic setting. The referee did not discuss plaintiff's belated request that he also be awarded sole legal custody of the child.

Following objections, the trial court generally agreed with the referee's findings and conclusions. However, the court disagreed that limiting defendant's parenting time to supervised parenting time would be in the child's best interests. The court awarded, among other things, primary physical custody of the child to plaintiff. Defendant was awarded unsupervised parenting time every other weekend, and for three hours during the week. The parties were ordered to attend

---

[1] Plaintiff's motion did not include a request to change the child's legal custody.

coparenting counseling, defendant was ordered to attend individual counseling, and the child was to receive individual counseling for a period of time to be determined by the counselor. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

"[I]n child custody-disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. The great weight of the evidence standard of review instructs that "the trial court's determination will be affirmed unless the evidence clearly preponderates in the other direction." *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). In child-custody matters, an abuse of discretion occurs when the result is " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Shulick v Richards*, 273 Mich App 320, 324-325; 729 NW2d 533 (2006), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). Clear legal error occurs when the trial court "chooses, interprets, or applies the law" incorrectly. *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994).

Most of the parties' arguments are preserved for our review. However, defendant acknowledges that she did not preserve her claim that the trial court erred by scheduling an evaluation before first determining whether there was proper cause or a change in circumstances. Because this issue is unpreserved, our "review is . . . limited to plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *In re Diehl*, 329 Mich App 671, 701; 944 NW2d 180 (2019).

## III. HEARSAY

Defendant argues that the trial court erred by overruling her objections to the admission of the child's various statements, which defendant contends were inadmissible hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). It is generally inadmissible unless it falls within an established exception. MRE 802; *In re Snyder*, 223 Mich App 85, 91; 566 NW2d 18 (1997).

The referee admitted into evidence the child's statements because they were not being offered to prove the truth of the matter asserted (e.g., to prove that plaintiff was actually bad), but rather to show what the child was saying about plaintiff and his family. While defendant concedes some of the child's statements were not hearsay, she argues that other statements did qualify as hearsay. Defendant does not, however, identify the specific statements that she believes were inadmissible hearsay. A party "may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Norman*, 184 Mich App 255, 260; 457 NW2d 136 (1990). Thus,

this issue is not properly before this Court because defendant failed to identify the statements at issue and we decline to consider it now.

Defendant's arguments in her reply brief do not convince us otherwise. Defendant relies on *Fletcher*, 447 Mich 871, and *MacIntyre v MacIntyre*, 267 Mich App 449; 705 NW2d 144 (2005), as support for her argument that she is not required to present this Court with specific hearsay statements, or discuss them individually. However, these authorities do not support that argument. Both *Fletcher* and *MacIntyre* hold that a *trial court* need not comment on every piece of evidence in its factual findings. See *Fletcher*, 447 Mich at 883-884 ("the trial court's failure to address the myriad facts pertaining to a factor does not suggest that the relevant among them were overlooked"); *MacIntyre*, 267 Mich App at 452 ("[the trial court's] findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties"). These same rules do not necessarily apply to parties on appeal. See, e.g., *Norman*, 184 Mich App at 260. We conclude that defendant's argument is incomplete because it fails to identify the specific statements that she believes are inadmissible hearsay.

## IV. PROPER CAUSE OR A CHANGE IN CIRCUMSTANCES

Defendant next argues that the trial court erred by failing to determine that there was proper cause or a change in circumstances to support plaintiff's motion for a change of custody before referring the case to the Friend of the Court for an investigation. We disagree.

The Child Custody Act, MCL 722.21 *et seq*., permits a trial court to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). A modification or amendment is only permissible if it is in the child's best interests. MCL 722.27(1)(c). "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Vodvarka v Grasmeyer*, 259 Mich App 499, 511; 675 NW2d 847 (2003). A change in circumstances is demonstrated when, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Id*. at 513. "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id*. at 513-514. There is no requirement a trial court hold an evidentiary hearing before determining whether proper cause or a change in circumstances exists. *Id*. at 512. "[T]he court can accept as true the facts allegedly comprising proper cause or a change of circumstances, and then decide if they are legally sufficient to satisfy the standard." *Id*.; *Mitchell*, 296 Mich App at 518 ("The trial court is merely required to preliminarily determine whether proper cause or a change of circumstances exists before reviewing the statutory best-interest factors with an eye to possibly modifying a prior custody order.").

Plaintiff moved for a change in custody on the basis of the child's statements, which he alleged were indicative of defendant's alienating behaviors. Soon after, the trial court issued an

order stating it "reviewed the motion for legal sufficiency." In finding plaintiff had established proper cause or a change in circumstances, the trial court stated:

> Premised upon review of the pleadings, the court is of the opinion that the Petitioner has established proper cause or a material change of circumstances. The matter of proper cause or a material change of circumstances will be subject to further review at either a referee, conciliation, or court proceeding. The Friend of the Court Referee shall conduct a referee hearing and make a recommendation to the Court, with copies to the parties and counsel of record, regarding the matter of Custody.

Defendant argues the trial court committed a "plain error in failing to make any sort of proper cause or change in circumstances finding" before referring the matter to the Friend of the Court referee. Defendant's argument is clearly contradicted by the record and there is no plain error on this basis.

## V. BEST-INTEREST FACTORS

Defendant next argues that the trial court abused its discretion when it concluded a change in custody was in the child's best interests. According to defendant, this finding was against the great weight of the evidence. We disagree.

"Once a party has met the initial burden of showing a change in circumstances or proper cause to revisit the custody order, the next step is for the circuit court to determine the applicable burden of proof for the custody hearing." *Dailey*, 291 Mich App at 666-667. When, as in this case, "a modification of custody (either by changing custody or parenting time) would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest." *Brown v Loveman*, 260 Mich App 576, 585; 680 NW2d 432 (2004). "Generally, the trial court must consider and explicitly state its findings and conclusions regarding each factor, and the failure to do so is usually reversible error." *LaFleche v Ybarra*, 242 Mich App 692, 700; 619 NW2d 738 (2000). The best-interest factors include:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

Defendant challenges the trial court's findings regarding factors (b), (g), (h), (j), and (l).

A. FACTORS (b) AND (g)

The trial court found factor (b) was satisfied "because of the testimony presented by [defendant] where there was not recognition of some of the statements that would have been made could be considered to be parental alienation and enmeshment." The trial court reviewed the referee's findings as to factor (g), which determined: "[defendant] has a diminished ability to co-parent, has issues around paranoia, and is manipulative." The trial court concluded these findings were supported by the record because they:

> [Were] based on the [r]eferee's first-hand hearing of the testimony presented by [defendant] in conjunction with the testimony of Dr. Hobbs. [The referee] found that there were psychological issues that are concerning for their effects on [the child] based on Dr. Hobbs'[s] testimony and therefore favored [plaintiff] regarding the mental and physical health of the parties involved . . . .

The trial court did not err when it concluded that these factors weighed in plaintiff's favor. Dr. Hobbs testified that defendant has the disposition to provide the child with love, affection, and guidance, but she presently lacked the capacity to do so appropriately. Dr. Hobbs discussed the enmeshment between defendant and the child, and how this could affect the child's attachment issues and slow his development of independence. Dr. Hobbs also testified that defendant had planted "the seed" of parental alienation, and agreed that some of defendant's behaviors properly could be regarded as alienating the child from plaintiff. Dr. Hobbs explained that this could also lead to angry outbursts or depression in the child as he became older and struggled for independence while also thinking that he has to take care of defendant.

Flood's testimony was even more critical of defendant. Flood identified the difficulties the child would have as he struggled to reconcile his love for plaintiff and his need to also maintain the "loyalty contract" with defendant. Flood discussed a number of defendant's alienating behaviors, such as telling the child that plaintiff had attempted to kick down a door, and how they were inappropriate and harmful. Flood also testified that it was detrimental to a child for a parent to have all their needs met by the child, and Flood maintained that this was a form of abuse and enmeshment because it interfered with the child's development of independence. Flood further opined that plaintiff would not be able to continue to counteract the effects of defendant's attempts to alienate the child from plaintiff "the longer this thing marinates," especially as the child aged. Flood also raised possible future problems, such as the child refusing to accept gifts from plaintiff, conflicted emotions concerning plaintiff's relatives, and possible harm if the child reported untrue allegations to his teachers or others.

In her testimony, defendant largely denied any desire to alienate the child from plaintiff and she indicated that she often spoke positively of plaintiff to the child. She rejected the contention that she was "enmeshed" with the child or that she suffered from any psychological issues. On appeal, defendant argues the trial court erred by giving more deference to the critiques of her parenting than the other testimony showing her strengths as a mother.

As the fact-finder, the trial court was free to give due weight to the testimony presented. *Daoud v De Leau*, 455 Mich 181, 202-203; 565 NW2d 639 (1997) ("[T]he testimony of a witness is to be weighed by the factfinder in the matter at bar."). This Court affords deference to the trial court's ability to judge a witness's credibility. See *In re BKD*, 246 Mich App 212, 220; 631 NW2d 353 (2001). Although there was testimony that emphasized the positive side of defendant's parenting, there was also testimony demonstrating her actions were emotionally harmful to the child. Reversal is not warranted because the trial court's conclusions as to factors (b) and (g) were not against the great weight of the evidence.

## B. FACTOR (h)

The trial court found factor (h) favored plaintiff because the child was "developing a school record" in Alma schools. Defendant asserts that the trial court gave too much weight to the child's two-week enrollment in Alma schools while essentially ignoring the evidence, particularly from Dr. Hobbs, that both parents could provide educational opportunities for the child. The court's decision was made with respect to its earlier determination that the child would attend school in Alma near plaintiff, and would stay with plaintiff during the week, at least until the trial court's ultimate custody decision. Defendant does not argue that this earlier decision was incorrect. Therefore, the trial court's finding that the child's "school record," as it then existed, favored plaintiff was supported by the evidence. Although this was a contested point, it was not against the great weight of the evidence to conclude this factor favored plaintiff, particularly considering plaintiff's more direct ability to help the child with schoolwork during the week.

## C. FACTOR (j)

The trial court agreed with the referee's conclusion that factor (j) favored plaintiff because Dr. Hobbs testified that defendant's behaviors toward the child were indicative of enmeshment. Defendant argues that the trial court and referee failed to consider that both parties had contributed

to the breakdown of their coparenting relationship. Defendant relies on her testimony that she encouraged the child to have a close relationship with plaintiff, and that she shared information with plaintiff about the child's medical appointments. She also relies on Dr. Hobbs's analysis that plaintiff "did not seem to have a lot of insight into his behaviors or the things that cause him emotional angst." But, even if her observation is correct, defendant has not explained how it impacts plaintiff's willingness to encourage the child's relationship with defendant. With respect to defendant's remaining assertions, defendant glosses over all the testimony supporting the trial court's determination that defendant had been engaging in alienating behaviors and that there had been at least initial signs of unhealthy enmeshment. We will not reverse on this basis because the findings were supported by the testimony and are, therefore, not against the great weight of the evidence.

## D.  FACTOR (l)

The trial court upheld the referee's findings which determined factor (l) also favored plaintiff, stating:

> [Defendant's] denial of her enmeshment, her inability to appreciate the harm to [the child] of her attitudes and her conduct and her persistence with this position since [the child's] birth weighs heavily in favor of this recommended change in custody. Great weight was placed on the testimony of Dr. Hobbs and Randy Flood in terms of the damage to a child of the types of parental behaviors seen in this case. Most concerning is [defendant's] inability to appreciate the harm to [the child].

Again, this conclusion was supported by Dr. Hobbs and Flood. Dr. Hobbs testified that defendant had an unhealthy relationship with the child. And Flood stated that such a relationship coupled with defendant's alienating behavior could be extremely damaging to the child.

Defendant argues that the trial court could not base its conclusions on Flood's testimony because he did not interview defendant or the child, and because he allegedly conceded that he could not make conclusive findings unless he performed a full evaluation. Defendant does not cite any legal authority in support of her assertion. Given defendant's lack of legal development for this argument, it is abandoned. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

Defendant also disputes the trial court's reliance on Flood's testimony, given the disagreement between Flood and Dr. Hobbs about the potential negative consequences to the child if the trial court drastically changed the child's parenting-time schedule. However, this was simply a difference of opinion as to what kind of potential harm the child, and defendant, could suffer if a parenting-time change was too great. Flood opined that the court should essentially "rip off the Band-Aid" and deal with the consequences, whereas Dr. Hobbs recommended a more gradual change. Again, the trial court was free to give the weight to these experts' opinions that the court felt they deserved. *Daoud*, 455 Mich at 202-203.

## VI. SUPERVISED PARENTING TIME

On cross-appeal, plaintiff argues that the trial court abused its discretion by not following the referee's recommendation that defendant's parenting time be supervised. The trial court found that such a sudden and drastic change in parenting time would not be in the child's best interests. Because this finding is well supported by Dr. Hobbs's testimony, the trial court did not err.

Dr. Hobbs explained that defendant engaged in alienating behavior, but Dr. Hobbs did not believe that her conduct met the standard of parental alienation syndrome. Dr. Hobbs also testified that the child was so attached to defendant that limiting his access to her "would do great damage to the child." Dr. Hobbs opined that if the child was separated from defendant prematurely, it would cause him to be "wrought with guilt," he would be angry and was "going to be bad," and he would be thrust into a crisis. Dr. Hobbs also opined that it would not be in the child's best interests to change custody whereby he would be primarily living with plaintiff because the child was too attached to defendant and it would be very difficult for him to emotionally adjust without real consequences. Instead, Dr. Hobbs recommended extended blocks of parenting time with plaintiff, such as every other week. This would help provide the child with consistency. Dr. Hobbs also noted that this schedule could be altered when the child started school.

Plaintiff claims that the trial court should have followed Flood's recommendation that defendant only have supervised parenting time. However, Flood's testimony concerning possible future harm or events was generalized, and it was somewhat speculative when applied to the actual facts of this case. Flood acknowledged that he had not performed an evaluation on the parties or the child, had not met defendant, had not performed any tests, and had not written any reports for the court.

Although the trial court did not follow Flood's recommendation that defendant's parenting time be supervised, it does not mean its decision to grant defendant unsupervised time was against the great weight of the evidence. Indeed, Dr. Hobbs's testimony supports the trial court's finding that the child was at risk of harm if defendant's parenting time was too restrictive. Plaintiff's reliance on Dr. Hobbs's other findings and recommendations also undercuts his implied assertion that the trial court should not have given credence to this portion of her testimony. Plaintiff has not shown that the trial court's decision on this issue is against the great weight of the evidence or constitutes an abuse of discretion.

## VII. REFUSAL TO AWARD PLAINTIFF SOLE LEGAL CUSTODY

Plaintiff also argues on cross-appeal that the trial court erred by denying his request for an award of sole legal custody. Under MCL 722.26a(1), a trial court must determine whether joint legal custody is in the child's best interests by considering the statutory best-interest factors and "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." Generally,

> [i]n order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. If two equally capable parents whose marriage

relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [*Bofysil v Bofysil*, 332 Mich App 232, 249; 956 NW2d 544 (2020) (citation omitted).]

In this case, the trial court declined to modify the parties' joint-custody arrangement because plaintiff never pleaded a claim for sole legal custody and plaintiff did not present evidence to support such a claim. Therefore, the issue was not properly raised, and was never addressed or decided by the referee. Defendant correctly notes, and plaintiff acknowledges, that plaintiff did not raise this as an issue until his written rebuttal arguments after the close of proofs. Moreover, plaintiff never presented an actual argument to support a request for sole legal custody. His request was made only in the "conclusion and request for relief" portion of his written closing arguments and was conclusory in nature, without any citation to caselaw or supportive evidence. Given these circumstances, the trial court did not abuse its discretion in denying plaintiff's request for sole legal custody. This conclusion is bolstered by the fact that the record largely demonstrates both parents were capable of making decisions for the child.

Affirmed.

/s/ Thomas C. Cameron
/s/ Noah P. Hood